**KRONENBERGER BURGOYNE, LLP**
Henry M. Burgoyne, III (Bar No. 203748)
Karl S. Kronenberger (Bar No. 226112)
Jeffrey M. Rosenfeld (Bar No. 222187)
150 Post Street, Suite 520
San Francisco, CA 94108
Telephone: (415) 955-1155
Facsimile: (415) 955-1158
hank@KBInternetLaw.com
karl@KBInternetLaw.com
jeff@KBInternetLaw.com

Attorneys for Plaintiff
Incorp Services, Inc.

E-filing

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

**INCORP SERVICES, INC.**, a Nevada corporation,

    Plaintiff,

vs.

**DOES 1-10,** inclusive,

    Defendants.

Case No. CV 11 4660 PSG

**COMPLAINT FOR DAMAGES AND EQUITABLE AND OTHER RELIEF**

**DEMAND FOR JURY TRIAL**

Case No.                                                      **COMPLAINT**

Plaintiff Incorp Services, Inc. ("Incorp"), a Nevada corporation, by and through its attorneys of record, states and alleges as follows:

## INTRODUCTION

1. Incorp provides a variety of company formation and registration services, including registered agent services. Incorp invests significant resources in advertising its services to potential customers, predominantly through online, pay-per-click advertisements.

2. Beginning in May 2010, unknown Doe Defendants engaged in a campaign of repeatedly clicking on Incorp's online ads, with no interest in learning about Incorp or purchasing Incorp's services.

3. In the online advertising industry, this type of misconduct is known as click fraud.

4. Defendants' click fraud harmed Incorp by imposing pay-per-click costs on Incorp, depleting Incorp's advertising budget, and causing Incorp's ads not to appear once Incorp's advertising budget had been depleted.

5. On information and belief, Defendants' click fraud benefitted Defendants by allowing their online advertisements to obtain a more prominent position in search engine results, thereby driving a greater volume of potential customers to Defendants' website(s).

6. As a result of Defendants' misconduct, Incorp has been substantially harmed.

7. At this juncture, Incorp has identified IP addresses associated with the click fraud, but has not been able to definitively identify the persons responsible for the click fraud. Thus, Incorp has styled this complaint as an action against anonymous Doe Defendants. Incorp will amend this complaint upon learning the true identities of the Doe Defendants.

//
//

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this action under 28 U.S.C. §1331 for Plaintiff's claim under the Computer Fraud and Abuse Act, 18 U.S.C. §1030. This Court has supplemental jurisdiction over Plaintiff's remaining claims arising under the law of the State of California under 28 U.S.C. §1367.

9. Venue is proper under 28 U.S.C. §1391 because a substantial part of the events, omissions, and harm, giving rise to Plaintiff's claims occurred within the District.

## INTRADISTRICT ASSIGNMENT

Pursuant to Local Civil Rule 3-2(c), a substantial part of the events or omissions that gave rise to this action occurred in Santa Clara County, and this action should be assigned to the appropriate division of the Court on that basis.

## PARTIES

10. Plaintiff Incorp Services, Inc. is a Nevada corporation based in Henderson, Nevada.

11. Incorp does not know the true names and capacities, whether individual, associate, corporate or otherwise, of Defendants sued herein as DOES 1-10 inclusive, and Incorp therefore sues said Defendants by such fictitious names.

12. Incorp will amend this complaint to state the true names and capacities of the Defendants once they have been discovered. Incorp is informed and believes, and, on that basis, alleges that each Defendant sued herein by a fictitious name is in some way liable and responsible to Incorp based on the facts herein alleged.

## FACTUAL ALLEGATIONS

### Incorp's Online Advertisements

13. Incorp provides a variety of company formation and registration services, including registered agent services. Incorp is currently the largest Nevada-based national registered agent firm, the second largest registered agent in Nevada by volume of active business entities represented, and the fourth largest registered agent firm nationally.

14. Incorp spends significant resources advertising its services to potential customers. Nearly all of Incorp's advertising is in the form of online ads. Incorp uses the online advertising services of Microsoft, Google, and Yahoo! (collectively the "Search Engines") to create and to display Incorp's online ads.

15. Using the Search Engines' tools, advertisers, such as Incorp, can create text and banner ads to appear alongside organic Internet search results. The Search Engines display an advertiser's ads when a search is performed on a keyword that was preselected by the advertiser. For example, an airline might preselect the keywords "cheap airline tickets." When an Internet user types that phrase into a search engine, sponsored ads are displayed alongside the organic results. When a user clicks on a sponsored ad, he or she is directed to the advertiser's website.

16. The Search Engines use a pay-per-click ("PPC") payment model, whereby advertisers allot a budget for a particular advertising campaign (*i.e.* set of keywords) for a given period of time. While the advertising campaign is active, the advertiser's sponsored ads will appear in the Search Engines' search results when a user types a keyword into a search engine. Each time a user clicks on a sponsored ad, the advertiser pays the Search Engine for that click and the charge for that click (as determined through the bidding process described below) is deducted from the advertiser's budget. When the budget for the time period has been depleted, the sponsored ads will no longer appear until a new budget cycle beings.

17. Advertisers select keywords through a bidding process offered by the Search Engines. Advertisers bid the maximum amount they are willing to pay for a particular keyword or phrase to trigger the display of an ad. Advertisers bid anywhere from a few cents to a few hundred dollars depending on the bids of the advertisers' competitors.

18. The Search Engines display the ad associated with the highest bid and quality score—as determined by the Search Engines—in the most prominent position on the search results page.

19. The ad associated with the second highest bid is displayed in the second most prominent position, and so on.

20. The prominent placement of sponsored ads is critical for advertisers. The more prominent an ad's placement, the greater the volume of users who will click on the ad and be directed to the advertiser's website.

21. Using the Search Engines, Incorp bids on numerous keywords to display its sponsored ads.

### Click Fraud

22. The PPC advertising model is subject to "click fraud." Click fraud is an industry term that refers to the situation where a person imitates a legitimate Internet user and clicks on a sponsored ad for the purpose imposing a cost-per-click on the advertiser, without having any actual interest in the advertiser's goods or services.

23. One type of click fraud is competitor click fraud. This type of click fraud occurs when the perpetrator of the fraud repeatedly clicks on the sponsored ad of a competitor in an effort to deplete the competitor's advertising budget and cause the competitor's ads not to appear once its budget is depleted. At the same time, the click fraud victims incur the costs-per-click without obtaining the benefit—*i.e.* the click fraud victims pays for clicks executed by persons other than bona fide potential customers.

24. Moreover, by exhausting the ad budget of the click fraud victims, competitor click fraud lowers the cost of the targeted keyword for the perpetrator. To wit, once the perpetrator has depleted its competitor's advertising budget, the perpetrator's ads will be displayed in a more prominent position and at a lower price. At the same time, the cost for the victim to convert a click into an actual sale increases because of the fraudulent clicks.

25. Click fraud can be accomplished through several methods, including manually, where real people repeatedly click on sponsored ads and through computerized tools, which automatically click on sponsored ads.

//

### Incorp Detects Click Fraud on Its Ads

26. Incorp uses click fraud detection software to identify suspicious activity.

27. Beginning in May 2010, Incorp's click fraud detection software flagged unique IP addresses that were associated with repeated clicks on Incorp's sponsored ads. Incorp's IIS logs recorded the times of the clicks and the source of the clicks (including the IP addresses and HTTP headers).

28. The clicks associated with the flagged IP addresses occurred repeatedly, often several times a day. In total, the clicks associated with the flagged IP addresses caused Incorp to incur costs-per-click totaling several thousands of dollars.

29. None of the clicks associated with the flagged IP addresses resulted in any purchase of Incorp's services.

30. This evidence demonstrated to Incorp that a person or entity was engaging in click fraud, *i.e.* the person or entity was clicking on Incorp's online ads not with the intention to learn about or purchase Incorp's services, but rather to impose costs on Incorp and to deplete Incorp's advertising budget.

31. Incorp raised this click fraud issue with some of its competitors and discovered that the competitors had also experienced click fraud associated with the same IP addresses.

32. The two flagged IP addresses associated with the greatest number fraudulent clicks are 24.253.88.55 and 70.173.223.5.

33. Despite Incorp's efforts, Incorp has been unable to definitively identify the persons responsible for the fraudulent clicks.

34. Incorp has been substantially harmed by the anonymous click fraud.

### FIRST CAUSE OF ACTION
### (VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C. §1030)

35. Incorp repeats and incorporates by reference the allegations in Paragraphs 1-34 above.

//

36. The Search Engines' computers are used in and affect interstate commerce and communication, and thus are protected computers.

37. Incorp created and stored online ads on the Search Engines' protected computers.

38. With an intent to defraud Incorp and benefit themselves, Defendants repeatedly clicked on Incorp's online ads, which are stored on the Search Engines' computers. In clicking on Incorp's online ads, Defendants accessed the Search Engines' protected computers, *i.e.* when Defendants clicked on Incorp's ads, they sent an electronic instruction to the Search Engines' computers, which interpreted Defendants' click as an interest in Incorp's ad, and then redirected Defendants to Incorp's website.

39. Defendants had no interest in learning about or purchasing Incorp's service when they clicked on Incorp's ads. Rather, Defendants clicked on Incorp's ads to impose costs-per-click on Incorp, to deplete Incorp's advertising budgets, and on information and belief, to increase the prominence of Defendants' own online ads.

40. In clicking on Incorp's online ads without having an actual interest in Incorp's website or services, Defendants exceeded their authorized access to the Search Engines' protected computers, furthered their fraud, and obtained things of value in violation of 18 U.S.C. §1030(a)(4).

41. As a result of Defendants' unauthorized access, Incorp incurred losses of more than $5,000 in less than a one-year period in the form of costs-per-click and lost sales.

## SECOND CAUSE OF ACTION
## (FRAUD)

42. Incorp repeats and incorporates by reference the allegations in Paragraphs 1-41 above.

//

//

43. In clicking on Incorp's online ads, Defendants represented—through their conduct—that they were interested in learning about and/or purchasing Incorp's services.

44. In fact, Defendants had no interest in learning about Incorp's services and had no intention of purchasing Incorp's services. Rather, Defendants intentionally clicked on Incorp's ads to impose costs-per-click on Incorp, to deplete Incorp's advertising budgets, and on information and belief, to increase the prominence of Defendants' own online ads.

45. Incorp relied on Defendants' representation that they were bona fide potential customers, in that Incorp maintained its advertising budget with the Search Engines, maintained its keyword selection and advertising text, maintained its keyword bid amounts, and paid the Search Engines for the costs-per-click associated with Defendants' clicks, not alerting them of Defendants' ongoing fraud.

46. Defendants caused harm to Incorp through their misrepresentations by depleting Incorp's advertising budgets, imposing costs-per-click on Incorp, causing Incorp's ads not to appear, and increasing the conversion costs for Incorp's ads.

47. As a result of the Defendants' misconduct, Incorp has been substantially harmed.

## THIRD CAUSE OF ACTION
### (INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE)

48. Incorp repeats and incorporates by reference the allegations in Paragraphs 1-47 above.

49. Incorp enjoys a high conversion rate for its online advertisements. In other words, a large percentage of Internet users who click on Incorp's ads end up purchasing Incorp's services.

50. Incorp has a relationship with potential customers who view its online ads, knowing that a large percentage of them will purchase Incorp's services. Thus, this relationship results in a probable future economic benefit to Incorp.

51. On information and belief, Defendants knew about Incorp's conversion rate for its online ads and the likelihood that Incorp's online ads would result in a probable future economic benefit to Incorp.

52. Defendants repeatedly clicked on Incorp's online ads with no interest in learning about or purchasing Incorp's services. Through this conduct, Defendants intentionally disrupted Incorp's relationship with its potential customers by depleting Incorp's online advertising budget. By depleting Incorp's budget, Defendants caused Incorp's ads not to appear to potential customers, who were then not directed to Incorp's website, and did not purchase Incorp's services.

53. As a direct result of Defendants' misconduct, Incorp suffered economic harm. Specifically, Defendants caused potential customers of Incorp not to see Incorp's online ads, view Incorp's website, or purchase Incorp's services.

54. As a result of Defendants' misconduct, Incorp has been substantially harmed.

## FOURTH CAUSE OF ACTION
## (INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS)

55. Plaintiff repeats and incorporates by reference the allegations in Paragraphs 1-54 above.

56. Valid and enforceable contracts exist between Incorp and the Search Engines, whereby the Search Engines agreed to provide online advertising services on behalf of Incorp.

57. Defendants knew about Incorp's contract with the Search Engines.

58. Defendants intentionally disrupted Incorp's relationship with the Search Engines by depleting Incorp's online advertising budget and effectively raising the cost to Incorp of displaying an online ad. To wit, Defendants' click fraud caused the conversion rate of Incorp's online ads to drop, which in turn caused the cost for Incorp's conversions to jump. As a result of this increase in Incorp's cost of conversion, Incorp re-evaluated its relationship with the Search Engines and its bidding and budgeting

processes to determine whether they remained economically viable. In other words, Incorp had to determine whether it still made economic sense to pay a certain amount for online ads when the ads were having a less effective result for Incorp.

59. As a result of the Doe Defendants' misconduct, Incorp has been substantially harmed.

## FIFTH CAUSE OF ACTION
## (BREACH OF CONTRACT)

60. Plaintiff repeats and incorporates by reference the allegations in Paragraphs 1-59 above.

61. Incorp conditions the use of its website on agreement to its Terms of Use, a link to which is prominently displayed at the bottom of Incorp's website. A copy of the Terms of Use is attached hereto as Exhibit A.

62. When Defendants clicked on Incorp's ads, they were directed to Incorp's website, where they agreed to Incorp's Terms of Use.

63. Incorp's Terms of Use constitutes a valid, enforceable contract between Incorp and Defendants.

64. Incorp performed all conditions, covenants, and promises required to be performed by Incorp under the Terms of Use.

65. Defendants breached Incorp's Terms of Use by providing misleading information to Incorp, by impersonating a bona fide potential customer, by accessing data, in the form of online ads, which was not intended for Defendants, by attempting to breach security and authentication measures without authorization, and by attempting to interfere with the use of Incorp's website by others.

66. This above-described conduct by Defendants constituted material breaches of Incorp's Terms of Use.

67. As a result of Defendants' material breaches, Incorp was substantially harmed.

//

## SIXTH CAUSE OF ACTION
## (VIOLATION OF CAL. BUS. & PROF. C. §17200)

68. Plaintiff repeats and incorporates by reference the allegations in Paragraphs 1-67 above.

69. With an intent to harm Incorp and benefit themselves, Defendants repeatedly clicked on Incorp's online ads. In clicking on Incorp's online ads, Defendants had no interest in learning about Incorp's service and had no intention in purchasing Incorp's services. Rather, the Doe Defendants clicked on Incorp's online ads to impose costs-per-click on Incorp, to deplete Incorp's advertising budgets, and on information and belief, to increase the prominence of Defendants' own online ads.

70. The above-described misconduct constitutes an unfair, unlawful, and fraudulent business practice by Defendants in violation of California Business and Professions Code section 17200.

71. As a result of the Doe Defendants' misconduct, Incorp was substantially harmed.

## PRAYER FOR RELIEF

WHEREFORE, Incorp prays for judgment against Defendants as follows:

1. For a preliminary and permanent injunctive relief enjoining Defendants from engaging in any conduct resulting in the improper or invalid clicks on any of Incorp's online advertisements;

2. For an award of compensatory damages to be proved at trial arising from Defendants' violation of federal and state statutes, fraud, breach of contract, intentional interference with prospective economic advantage, and intentional interference with contractual relations;

3. For an award of punitive damages, pursuant to Civil Code section 3294 or other relevant statute;

4. For an award of Incorp's attorneys' fees under Paragraph 25(e) of Incorp's Terms of Use;

5. For an award of Incorp's costs of suit;

6. For an award of prejudgment interest to the extent allowed by law; and

7. For such other and additional relief as the Court deems just and proper.

Dated: September 20, 2011

**KRONENBERGER BURGOYNE, LLP**

By: _____
Jeffrey M. Rosenfeld

Attorneys for Plaintiff Incorp Services, Inc.

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial of this action by jury.

Dated: September 20, 2011

KRONENBERGER BURGOYNE, LLP

By: _____
Jeffrey M. Rosenfeld

Attorneys for Plaintiff Incorp Services, Inc.

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com