UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| INCORP SERVICES, INC., a Nevada corporation,<br><br>             Plaintiff,<br>     v.<br><br>DOES 1-10, inclusive,<br><br>             Defendants. | Case No.: C 11-4660 PSG<br><br>**ORDER GRANTING PLAINTIFF'S EX PARTE MOTION FOR ADMINISTRATIVE RELIEF TO TAKE EXPEDITED DISCOVERY**<br><br>**(Re: Docket No. 7)** |

On September 20, 2011, Plaintiff Incorp Services, Inc. ("Incorp") filed a complaint against ten Doe defendants ("Defendants") who Incorp claims have perpetrated "click fraud" on its online advertising business in violation of federal and state law. Incorp now moves for administrative relief from the initial disclosure and conference requirements imposed by the Federal Rules of Civil Procedure and Civil Local Rules. Incorp seeks leave so that it may take early discovery to identify Defendants and proceed with service in accordance with Fed. R. Civ. P. 4. The court has reviewed Incorp's complaint and papers in support of its motion. For the reasons set forth herein, the court hereby GRANTS Incorp's motion.

1

Case No.: 11-4660 PSG
ORDER

# I. BACKGROUND

Incorp is a Nevada corporation that provides company formation and registration services. It invests heavily in online, pay-per-click advertising.[1] It uses the services of another company, Innovative Software Design, Inc. ("Innovative") to design, maintain, and monitor Incorp's pay-per-click advertising campaigns.[2]

Incorp alleges that in May 2010, Defendants initiated a "click-fraud"[3] campaign against Incorp, whereby they repeatedly clicked on Incorp's advertisements – often once or multiple times per day – with no intention of purchasing Incorp's products.[4] As a result, Incorp suffered depletion of its advertising budget, causing Incorp's ads not to appear and allowing other online advertisements to obtain a more prominent position in search engine results. Incorp and Innovative utilized click fraud detection software and log files to record the time of and source of the clicks, including internet protocol ("IP") addresses associated with the clicks. Incorp has narrowed the greatest number of fraudulent clicks to two IP addresses, both serviced by the same internet service provider ("ISP").[5] Incorp nevertheless has not been able to identify definitively the particular person(s) responsible for these clicks.

Incorp brings this action under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, and also alleges several common law and state consumer law causes of action. On October 6, 2011, Incorp filed the instant, ex-parte motion for expedited discovery. Incorp seeks to serve a subpoena

---

[1] *See* Docket No. 1 ¶¶ 1, 10, 13, 14 (Compl.).

[2] *See* Docket No. 8 ¶¶ 2, 3 (Berger Decl.).

[3] Incorp defines "click fraud" as an "industry term that refers to the situation where a person imitates a legitimate Internet user and clicks on a sponsored ad for the purpose imposing [sic] a cost-per-click on the advertiser, without having any actual interest in the advertiser's goods or services." Docket No. 1 ¶ 22.

[4] *See id.* ¶¶ 27-34.

[5] *See id.* ¶¶ 26, 32; Docket No. 8 ¶¶ 6-8.

2

Case No.: 11-4660 PSG
ORDER

on Cox Communications, Inc. ("Cox"), the ISP identified as owner of the suspect IP addresses, in order to obtain the identifying information regarding the two accounts at issue.[6]

## II. DISCUSSION

As a general rule, discovery takes place only after the defendants have been served.[7] Except when authorized by the court or pursuant to another exception, Fed. R. Civ. P. 26(d)(1) requires the parties to meet and confer, in accordance with Fed. R. Civ. P. 26(f), prior to seeking discovery "from any source."

Courts in this circuit have granted limited exception to the requirements imposed by Fed. R. Civ. P. 26(d)(1) and 26(f) in order "to permit the plaintiff to learn the identifying facts necessary to permit service on the defendant."[8] This is so "unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds."[9] The party seeking expedited discovery must establish good cause for the discovery sought. "Good cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party."[10] Certain safeguards may help the court assess a discovery request in light of this good cause standard. These include whether the moving party has (1) identified the defendant with enough specificity to allow for a determination of whether defendant is a real person or entity who can be sued in federal court, (2) recounted the steps taken to locate the defendant, (3) demonstrated the claims could survive a motion to dismiss, and (4) filed a discovery request with the court and identified the persons who might be served and for which

---

[6] *See* Docket No. 7 at 5 (Pl.'s Mot. For Expedited Discov.).

[7] *See Columbia Ins. Co. v. SeesCandy.com*, 185 F.R.D. 573, 577 (N.D. Cal. 1999).

[8] *See id.*

[9] *See Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) (quoting *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980)).

[10] *See Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002).

3

Case No.: 11-4660 PSG
ORDER

there is "a reasonable likelihood that the discovery process will lead to identifying information about defendant that would make service of process possible." [11]

The court is satisfied that Incorp has acted in fulfillment of these safeguards. By tracking the clicks over the course of several weeks and narrowing a substantial portion of the activity to only two IP addresses – both owned by the same ISP – Incorp has provided sufficient information to indicate that the responsible parties are "real person(s)" who may be sued in federal court.[12] Incorp also has demonstrated that it took reasonable steps to identify Defendants.[13] Because information pertaining to the assignee of an IP address is maintained by the third-party ISP, the only way in which Incorp is able to identify definitively the parties associated with the suspect IP addresses is by subpoena to the ISP.

Incorp has properly pled the elements of each cause of action in its complaint, such that it "could survive a motion to dismiss"[14] or a challenge on grounds of misjoinder.[15] In order to maintain the action against multiple defendants, Incorp must demonstrate that the claims against the Doe Defendants "aris[e] out of the same transaction, occurrence, or series of closely related transactions."[16] In a declaration supporting Incorp's motion, Innovative President Rick Berger explains that upon analyzing the data and narrowing a significant portion of the alleged click fraud to two IP addresses owned by the same ISP, one can reasonably conclude that the fraud "originated

---

[11] *See Seescandy.com*, 185 F.R.D. at 578-80.

[12] *See* Docket No. 8 ¶ 8 ("[O]nly a real person or entity could orchestrate a systematic campaign to repeatedly click on Incorp's ads over the course of weeks from a single source.").

[13] *See id.* at ¶¶ 4, 10 (describing steps taken to locate Defendants, including: analysis of data collected by Incorp's advertising services since 2010, identification of two unique IP addresses largely responsible for the fraudulent clicks, and confirmation that none of the clicks associated with the two IP addresses resulted in purchases).

[14] *See Seescandy.com*, 185 F.R.D. at 579; *Gillespie*, 629 F.2d at 642.

[15] Although an action may not be dismissed for misjoinder, the court may drop improperly-joined parties at any time. *See* Fed. R. Civ. P. 21.

[16] *See* Fed. R. Civ. P. 20(a)(2)(A).

4

Case No.: 11-4660 PSG
ORDER

from a single source." While the court recognizes the limited nature of this ex parte presentation as well as the limited information available to Incorp, the court finds that the facts alleged adequately support Incorp's conclusion.[17]

Incorp has identified Cox as the subject of its proposed discovery and filed the subpoena that it seeks to serve.[18] The proposed subpoena would order Cox to disclose "information sufficient to identify the user data and account holder" for the two IP addresses, including name, address, phone numbers, and email addresses associated with each.[19] It appears reasonably likely that the discovery process will lead to identifying information to make service of process possible.[20]

In sum, Incorp has shown sufficient need for the requested discovery in consideration of the administration of justice. The burden on and prejudice to Cox, as the responding party, from providing the requested discovery is minimal because the proposed discovery implicates only two IP addresses and seeks the limited subscriber information associated with those two accounts. Any prejudice to the subscriber(s) of the subject IP addresses also is limited by the narrow scope of identifying information to be provided and by the procedural protections afforded them by required

---

[17] The court does not find the same infirmities here that have prompted the severance of all but one Doe defendant in several recent cases before this court. In those cases, plaintiffs have brought copyright infringement claims against a large number of unrelated Doe defendants connected by nothing more than their alleged participation in an online peer-to-peer "swarm" that allowed for illegal downloading and distribution of plaintiffs' copyrighted material. The court found this allegation to be insufficient to sustain joinder under Fed. R. Civ. P. 20. *See, e.g., Diabolic Video Productions, Inc. v. Does 1-2099*, No. 5:10-cv-5865-PSG, Amended Order Granting-In-Part Motion for Leave to Take Limited Discovery Prior to Rule 26(f) Conference (Docket No. 16).

[18] *See* Docket No. 9, Ex. A (Burgoyne Decl.).

[19] *See id.*

[20] The court is well aware that the relationship between accused activity linked to an IP address and subscriber information associated with that IP address is imperfect at best. "Reasonably likely" to lead to identifying information that would make service of process *possible* is not the same as information that would make service of process *proper*. Incorp remains obligated under Fed. R. Civ. P. 11 to assess whether the ISP subscriber identified in response to the subpoena is also the person alleged to have committed the fraudulent acts. Should Incorp find itself unable to name and serve Defendants after receiving the discovery requested here, it should bear in mind that any requests for further expedited and intrusive discovery will be considered with these limitations in mind.

5
Case No.: 11-4660 PSG
ORDER

notice of the pending Rule 45 subpoena.[21] Such limited exposure to prejudice does not outweigh Incorp's right to initiate the process of redress for the harm allegedly committed.

### III. CONCLUSION

IT IS HEREBY ORDERED that Incorp's motion for administrative relief to take expedited discovery is GRANTED.

It is FURTHER ORDERED that Incorp is authorized to issue and serve a Rule 45 subpoena on Cox Communications for the limited purpose of obtaining information sufficient to identify the names and locations of Defendant(s). Incorp's counsel shall issue its subpoena in substantially the same form as the example attached to the Declaration of Henry M. Burgoyne,[22] and shall include a copy of this order.

IT IS FURTHER ORDERED that Cox will have thirty (30) days from the date of service upon it to serve the Doe Defendant(s) with a copy of the subpoena and a copy of this order. Cox may serve Defendant(s) using any reasonable means, including written notice sent to the last known address, transmitted either by first-class mail or via overnight service. Cox and the Defendant(s) each shall have thirty (30) days from the date of service to file any motions in this court contesting the subpoena (including a motion to quash or modify the subpoena).  If that 30-day period lapses without Defendant(s) or Cox contesting the subpoena, Cox shall have ten (10) days to produce to Incorp the information responsive to the subpoena.

IT IS FURTHER ORDERED that Cox shall not assess any charge to Incorp in advance of providing the information requested in the subpoena. Should Cox elects to charge for the costs of production, it shall provide a billing summary and cost report that serves as a basis for such billing summary and any costs claimed by Cox.

---

[21] *See Io Group, Inc. v. Does 1-65*, No. 10-4377 SC, 2010 WL 4055667, at *2 (N.D. Cal. Oct. 15, 2010).

[22] *See* Docket No. 9, Ex. A.

Case No.: 11-4660 PSG
ORDER

6

IT IS FURTHER ORDERED that Cox shall preserve all subpoenaed information pending delivery of such information to Incorp or the final resolution of a timely filed and granted motion to quash the subpoena with respect to such information.

IT IS FURTHER ORDERED that any information disclosed to Incorp in response to a subpoena may be used by Incorp solely for the purpose of protecting its rights under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 and other claims asserted in this action.

Dated: 11/9/2011

PAUL S. GREWAL
United States Magistrate Judge

7

Case No.: 11-4660 PSG
ORDER