United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| INCORP SERVICES INC., a Nevada corporation<br><br>Plaintiff,<br>v.<br><br>INCSMART.BIZ INC., a Nevada corporation; DAVID OLIVER, an individual; MICHAEL LASALA, an individual; JO ANN OLIVER, an individual; and DOES 1-10, inclusive,<br><br>Defendants. | Case No. 11-CV-4660-EJD-PSG<br><br>**MOTION TO DISMISS AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE, OR, IN THE ALTERNATIVE, TO TRANSFER VENUE** |

Before the Court are motions filed by Defendant Incsmart, amongst other co-defendants ('Defendant').[1] Specifically, Defendant moves the Court to dismiss for lack of personal jurisdiction and improper venue, or, in the alternative to transfer venue. Plaintiff Incorp opposes such motions.

Having heard oral argument and reviewed the parties' materials, the abovementioned motions should be dismissed, with exception of Jo Ann Oliver. For reasons that follow, Jo Ann Oliver is the only co-defendant that remains shielded from the Court's personal jurisdiction.

[1] The term, Defendant, will apply be generally to all the Defendants unless context demands otherwise.

United States District Court
For the Northern District of California

## I. BACKGROUND

### A. Procedural History

On September 20, 2011, Plaintiff filed suit against Defendant for claims under the Computer Fraud and Abuse Act and intentional interference of contract relations, amongst other claims based on Californian law.

On October 6, 2011, Plaintiff filed a motion to take early discovery. See, Discovery, Dkt Item No. 7. On November 9, 2011, the Court granted Plaintiff's motion and allowed Plaintiff to serve a subpoena on Cox Communications for the purpose of identifying the customer(s) associated with the two flagged IP addresses. See, Subpoena, Dkt Item No. 12. On January 17, 2012, Cox responded to the Subpoena and identified the Cox customers associated with the IP addresses at issue. See, Rosenfeld Decl. Dkt Item 47 ¶8 & Ex. F.

On February 3, 2012, Plaintiff filed its Amended Complaint, which added Defendants as parties and a claim for false advertising under the Lanham Act. See, Amended Complaint, Dkt Item No. 17. The Amended Complaint alleged claims for: (1) false advertising under the Lanham Act; (2) violation of the Computer Fraud and Abuse Act; (3) fraud; (4) intentional interference with prospective economic advantage; (5) intentional interference with contractual relations; and (6) breach of contract.

Following Defendants failure to respond to the Amended Complaint, the Clerk of the Court entered default against them in March 2012, and Plaintiff filed a motion for default judgment. See, Dkt Items No. 25, 28, 34.

Prior to the hearing on Plaintiff's motion for default judgment, Plaintiff was contacted by counsel for Defendants. See, Rosenfeld Decl. ¶12. The parties negotiated and filed a stipulation to set aside the default against Defendants, which the Court entered as an order on June 6, 2012. See, Stipulated Order, Dkt Item No. 40.

On June 18 2012, Defendant filed the motions that are now currently before the Court.

United States District Court
For the Northern District of California

**B. Factual Allegations**

Plaintiff Incorp provides a variety of company formation and registration services, including registered agent services across the country. Incorp describes itself as a corporation, "based in Henderson, Nevada." See, Amended Complaint, Dkt. No. 17, ¶20. It further describes itself as, "the largest Nevada-based national registered agent firm…" Id. Its business involves advertising its services to potential customers, primarily through online advertising, and spending resources in pursuit of such advertising. Id. ¶21. Plaintiff has expended resources to advertise its services on Microsoft, Google, and Yahoo! search engines – all of which are headquartered or have offices in the Northern District of California. Id. See also, Rosenfeld Decl. ¶¶2-6 & Exs. A-E.[2]

Defendant Incsmart also provides incorporation services and resident agent services across the country. See, Declaration of David Oliver "Oliver Decl.", ¶ 1. The corporate office for Incsmart is in Las Vegas, Nevada. See, Oliver Decl.,¶ 6. David Oliver is a resident of Las Vegas, Nevada, as well as the other individual Defendants. Id. at ¶ 1. David Oliver and Michael Lasala are officers of IncSmart. In addition, Jo Ann Oliver is David Oliver's elderly mother. Id, at ¶ 3. The Defendants have no meaningful ties, personally, to the State of California. The individual Defendants do not own or lease any real or personal property in California, nor have they ever owed or been required to pay taxes in California. See id, at ¶ 8.

Defendant's Website is located at <www.incsmart.biz>, on which they advertise Defendant's services. See, Amended Complaint, Dkt Item No. 17 ¶ 50. Incsmart's website advertises that it provides registered agent services in all fifty states. For example, the website states, "Our Registered Agent service is for any entity in any state," and "Choose your Registered Agent. IncSmart has Agents in all states." See, Amendment Complaint, Dkt Item No. 17 ¶70-74. The Incsmart Website is interactive, in so far that it allows a user to purchase registered agent, company formation, and company management services by proceeding through standard ecommerce checkout screens. See, Amended Complaint ¶54; Rosenfeld Decl. ¶9 & Ex. G.

[2] "The Search Engines use a pay-per-click ("PPC") payment model, whereby advertisers allot a budget for a particular advertising campaign (i.e. set of keywords) for a given period of time. Each time a user clicks on a sponsored ad, the advertiser pays the Search Engine for that click and the charge for that click (as determined through the auction process described below) is deducted from the advertiser's budget. See, Amended Complaint, Dkt. No. 17.

Case5:11-cv-04660-EJD Document52 Filed08/24/12 Page4 of 25

United States District Court
For the Northern District of California

Specifically, Plaintiff alleges that Incsmart's advertisements are false in so far that they do not provide—and in some cases cannot lawfully provide—the advertised registered agent services. Id. ¶55-56. In the vast majority of states, Incsmart is not registered to conduct business as either a domestic or foreign corporation, even where such a registration is required to serve as a registered agent or to conduct business in that state. Id. ¶57. In the vast majority of states that require a person to qualify as a commercial registered agent, Incsmart does not have the necessary qualifications and has not obtained the necessary certification. Id. ¶58. In some states, Incsmart improperly purports to accept service of process through a P.O. Box. Id. ¶60.

For California, the Incsmart Website advertises both specific corporate formation and registered agent services. Id. ¶67; Rosenfeld Decl. ¶10 & Ex. H. However, as alleged by Plaintiff, Defendants have not complied with the requirements of Corporation Code section 1505 for Incsmart to serve as a registered agent; nor has Incsmart registered as a Private Service Company with the California Secretary of State. Id. ¶67. Rather, instead of maintaining an office and personnel in California to act as a registered agent for its customers, Defendants have simply rented a mailbox at a UPS store, and used this mailbox for its registered agent services in circumstances where Defendants have not filed a section 1505 registration with the California Secretary of State—and thus cannot serve as a registered agent). Id. ¶67.

## II. DISCUSSION

With the advent and use of the Internet, new challenges for the law regarding personal jurisdiction have evolved. Thus far, the U.S. Supreme Court has not yet entered the debate.[3] Over

[3] See, A. Benjamin Spencer, *Jurisdiction and the Internet: Returning to Traditional Principles to Analyze Network–Mediated Contacts*, 2006 U. Ill. L.Rev. 71, 73-74 (2006)) (Many courts and scholars have grappled with how best to evaluate for constitutionality assertions of personal jurisdiction based on the internet, "reaching a wide range of conclusions about proper standards The U.S. Supreme Court has thus far not entered this debate.") Relevant to this case will be how Supreme Court authority in Calder v. Jones, 465 U.S. 783, 789 (1984) interplays Keeton v. Hustler Magazine, 465 U.S. 770, 774 (1984), and the sliding scale first established in Zippo Manufacturing Co. v. Zippo Dot Com, Inc., 952 F.Supp. 1119 (W.D.Pa.1997) and applied in the Ninth Circuit's decision, Cybersell, Inc. v. Cybersell, Inc., 130 F.3d 414, 418 (9th Cir.1997) and Mavrix Photo, Inc. v. Brand Techs, Inc., 647 F.3d 1218, 1230 (9th Cir. 2011) ("Mavrix") cert. denied, 132 S. Ct. 1101 (2012).

4

Case No. C 11-cv-4660-EJD
ORDER DISMISS MOTION FOR LACK OF PERSONAL JURISDICTION AND TRANSFER

the past decade, however, the Ninth Circuit has begun to frame standards for establishing personal jurisdiction with respect to the internet.

Here, the debate is made novel because it not only combines the internet with a federal false advertising claim, but neither the Plaintiff, nor Defendant reside in this forum's jurisdiction.

**A. Subject Matter Jurisdiction**

As a threshold matter, courts have an affirmative duty to examine their own subject matter jurisdiction. In re Tuli, 172 F.3d 707, 712 (9th Cir.1999). Pursuant to 12(b)(1) Fed. R. Civ. P., a Court may dismiss an action for lack of subject matter where the court has neither constitutional, nor statutory basis for a determination. See, Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir.2004). If the Court determines that it lacks subject matter jurisdiction, the Court must dismiss the action pursuant to Fed. R. Civ. P. 12(h)(3).

Plaintiff relies on claims under the Lanham Act and the Computer Fraud and Abuse Act (CFAA) for the purposes of subject matter jurisdiction. With respect to the CFAA claim, however, it is questionable whether Plaintiff has pled "a satisfactory showing of the facts necessary to establish jurisdiction" under the CFAA claim. See, Laub v. U.S. Dep't of the Interior, 342 F.3d 1080, 1093 (9th Cir.2003). Because of reasons stated in the Ninth Circuit's recent Nosal decision, the Court finds that Plaintiff's CFAA claim does require a more satisfactory showing of alleged facts to establish jurisdiction under the CFAA claim. See, United States v. Nosal, 676 F.3d 854, (9th Cir.2012)

In Nosal, the court addressed the CFAA and interpreted the phrase "exceeds authorized access" within the meaning of that statute. The court held that the phrase "does not extend to violations of use restrictions." Nosal, 676 F.3d 863.[4] The court reasoned that its interpretation was a more "sensible reading of the text and legislative history of a statute whose general purpose is to *punish hacking* – [being] the circumvention of technological access barriers." Id.[5]

[4] The *en banc* Nosal decision reversed U.S. v. Nosal, 642 F.3d 781, 785 (9th Cir.2011) – being a 2:1 decision that broadly interpreted the phrase: "exceeds authorized access" to include employer use restrictions.

[5] Nosal, 676 F.3d 858 ("But it is possible to read both prohibitions ["without authorization" and "exceeds authorized access"] as applying to hackers: '*without authorization*' would apply to outside hackers (individuals who have no authorized access to the computer at all) and '*exceeds*

Case5:11-cv-04660-EJD Document52 Filed08/24/12 Page6 of 25

United States District Court
For the Northern District of California

Here, and with regard to the CFAA claim, Plaintiff has pled the following: "In clicking on Incorp's online ads without having an actual interest in Incorp's website or services, Defendants exceeded their authorized access to the Search Engines' protected computers, furthered their fraud, and obtained things of value in violation of 18 U.S.C. §1030(a)(4)." See, Amended Complaint, Dkt Item No. 17 ¶80. The Court observes that there are no direct or clear allegations of "hacking" in this passage – being, broadly, "the circumvention of technological access barriers," not violation of "use restrictions." Nosal, 676 F.3d 863. In light of Nosal, the Court queries how a lack of "actual interest in Incorp's website" equates with outside or inside hacking. Id. The Amended Complaint further alleges that the Defendants used the Search Engines on Google and Yahoo to fraudulently click on Plaintiff's ads and to display Defendants' own ads. See, Amended Complaint, Dkt Item No. 17 ¶ 37-44.[6] Again, these factual allegations fail to 'flesh out' what the Ninth Circuit has described as hacking and the specific elements of subsection 1030(a)(4).[7] [8]

---

*authorized access'* would apply to inside hackers (individuals whose initial access to a computer is authorized but who access unauthorized information or files). This is a perfectly plausible construction of the statutory language that maintains the CFAA's focus on hacking rather than turning it into a sweeping Internet-policing mandate."

[6] Further, the Amended Complaint indicates that Defendant was a "person or entity" (albeit a non-purchasing one) that did not intend to learn about Plaintiff's services, but "rather impose costs and deplete Incorp's advertising budget". Id. ¶29-37. But *compare*, Nosal, 676 F.3d 857-8 ("Congress enacted the CFAA in 1984 primarily to address the growing problem of computer hacking, recognizing that, "[i]n intentionally trespassing into someone else's computer files, the offender obtains at the very least information as to how to break into that computer system." S.Rep. No. 99-432, at 9 (1986) (Conf. Rep.).")

[7] Nosal, 676 F.3d 857-8, Fn 4 ("Subsection 1030(a)(4) requires a person to (1) knowingly and (2) with intent to defraud (3) access a protected computer (4) *without authorization or exceeding authorized access* (5) in order to further the intended fraud. See, 18 U.S.C. § 1030(a)(4).")

[8] Nosal, 676 F.3d 863 ("For our part, we continue to follow in the path blazed by Brekka, 581 F.3d 1127, and the growing number of courts that have reached the same conclusion. These courts recognize that the plain language of the CFAA "target[s] the unauthorized procurement or alteration of information, not its misuse or misappropriation." Shamrock Foods Co. v. Gast, 535 F. Supp. 2d 962, 965 (D. Ariz. 2008); see also Orbit One Commc'ns, Inc. v. Numerex Corp., 692 F. Supp. 2d 373, 385 (S.D.N.Y. 2010) ("The plain language of the CFAA supports a narrow reading. The CFAA expressly prohibits improper 'access' of computer information. It does not prohibit misuse or misappropriation."); Diamond Power Int'l, Inc. v. Davidson, 540 F. Supp. 2d 1322, 1343 (N.D. Ga. 2007) ("[A] violation for 'exceeding authorized access' occurs where initial access is permitted but the access of certain information is not permitted."); Int'l Ass'n of Machinists & Aerospace Workers v. Werner-Masuda, 390 F. Supp. 2d 479, 499 (D. Md. 2005) ("[T]he CFAA, however, do[es] not prohibit the unauthorized disclosure or use of information, but rather unauthorized access.").")

6

Case No. C 11-cv-4660-EJD
ORDER DISMISS MOTION FOR LACK OF PERSONAL JURISDICTION AND TRANSFER

United States District Court
For the Northern District of California

Accordingly, because hacking was the mischief the CFAA sought to remedy, the Court finds that Plaintiff has not shown the facts necessary in its pleadings to establish jurisdiction. See, Laub, 342 F.3d, at 1093. As such, the Court grants Plaintiff leave to amend with respect to the CFAA claim.[9]

**B. Venue**

Despite the title of their motion, Defendant does not appear to argue that this district is an improper forum under 28 U.S.C. §1391. Rather, Defendants only argue that the Court should transfer this case for the convenience of the parties and witnesses under 28 U.S.C. §1404(a), discussed later. To the extent that Defendants do argue that this district is improper, such an argument would fail because a substantial part of the events which gave rise to this action occurred within the Northern District of California. See, Rodriguez v. California Highway Patrol, 89 F. Supp. 2d 1131, 1136 (N.D. Cal. 2000).[10] Many of these reasons overlap and are outlined below with respect to personal jurisdiction.

**C. Personal Jurisdiction: General and Specific Jurisdiction**

Personal jurisdiction is the ability of a court to exercise dominion over the parties so to ensure compliance with a judgment. The Fourteenth Amendment's Due Process Clause permits courts to exercise personal jurisdiction over a defendant who has "certain minimum contacts [with the forum]… such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." See, Int'l Shoe Co. v. Washington,326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) and Kulko v. Superior Court of Cal., 436 U.S. 84, 92, 98 S.Ct. 1690, 56 L.Ed.2d 132

[9] Under Federal Rule of Civil Procedure 15(a)(2), leave to amend is to be given "freely" and "when justice so requires," even if the plaintiff fails to request leave to amend. To the extent that the pleadings can be cured by the allegation of additional facts, the plaintiff should be afforded leave to amend. See, Cook, Perkiss and Liehe, Inc. v. Northern California Collection Serv. Inc., 911 F.2d 242, 247 (9th Cir.1990).

[10] See, also Vanity Fair Mills v. T. Eaton Co., 234 F.2d 633, 639 (2d Cir.1956) ("[I]n cases involving trademark infringement and unfair competition, is where the deceived customer buys the defendant's product)); see Sutter Home Winery, Inc. v. Madrona Vineyards, L.P., No. C 05-0587 MHP, 2005 WL 701599, *4 (N.D.Cal. Mar. 23, 2005) ("[T]he fact that a substantial number of consumers … who reside in this district may be confused by defendant's use of the 'Mélange de Trois' mark is sufficient to establish th[at] this jurisdiction is a proper venue for the adjudication of plaintiff's claim.").

United States District Court
For the Northern District of California

(1978). 326 U.S. 310. Personal jurisdiction may be either specific or general. See, Hirsch v. Blue Cross, Blue Shield of Kansas City, 800 F.2d 1474, 1477 (9th Cir.1986). See also, Heliocopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414 & n. 9, 104 S.Ct. 1868, 1872 & n. 9, 80 L.Ed.2d 404 (1984). The burden of establishing personal jurisdiction rests with the plaintiff. Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir.2004).

Personal jurisdiction in federal court must also comport with Rule 4(k) of the Federal Rules of Civil Procedure, as well as with federal due process. See id. at 800–01. Under Rule 4(k)(1)(A), the long-arm statute of the state in which the district court sits must be applied when determining whether the court has jurisdiction over out-of-state defendants. The California long-arm statute is coextensive with federal due process; so, in this Court, personal jurisdiction analysis consists solely of federal due process analysis. See, Schwarzenegger, 374 F.3d at 800–01.

Importantly, and absent formal discovery or an evidentiary hearing, a plaintiff need make only a prima facie showing that personal jurisdiction exists. See, Pebble Beach Co. v. Caddy,453 F.3d 1151, 1154 (9th Cir.2006) ("Pebble Beach") and; Rio Properties, Inc. v. Rio Int'l Interlink,284 F.3d 1007, 1019 (9th Cir. 2002) ("Rio Properties"). See also, Church Bros., LLC v. Garden of Eden Produce, LLC, No. 5:11–cv–04114 2012 WL 1155656 *2 (N.D. Cal. April 5, 2012.), and, Tagged, Inc. v. Does 1 through 10, No. C 09-0171, 2010 WL 370331 *4, 2010 U.S. Dist. LEXIS 5428,*11 (N.D.Cal. Jan. 25, 2010).

Here, Plaintiff does not contend that the Court has general jurisdiction; thus, the issue before the Court is solely whether it can assert "specific" jurisdiction for the claims arising out of Defendant's forum-related activities.[11] See, FDIC v. British-American Ins. Co. Ltd., 828 F.2d 1439, 1441 (9th Cir.1987); Haisten v. Grass Valley Medical Reimbursement Fund, Ltd., 784 F.2d 1392, 1396 (9th Cir.1986.)

While the *overarching framework* for personal jurisdiction asks whether a defendant has minimum contacts with the forum state such that the exercise of jurisdiction "does not offend

---

[11] See, Plaintiff's Opposition, at p10-11 Dkt No. 46. ("Plaintiff does not contend that the Court has general jurisdiction, but does contend that the Court has specific jurisdiction over all the Defendants.")

United States District Court
For the Northern District of California

traditional notions of fair play and substantial justice," the Ninth Circuit employs a three-prong test to assess specific jurisdiction – a test which conforms with International Shoe and its progeny. See, Schwarzenegger, 374 F.3d at 802. To satisfy minimum contacts for specific jurisdiction, each of the following prongs are assessed:

(1) The non-resident defendant must a) purposefully direct his activities or consummate some transaction with the forum, or resident thereof; or b) perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

(2) The claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3) The exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

See, Schwarzenegger, 374 F.3d at 802 (quoting Lake v. Lake, 817 F.2d 1416, 1421 (9th Cir.1987). The plaintiff bears the burden of satisfying the first two prongs of the test. If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state. If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to "present a compelling case" that the exercise of jurisdiction would not be reasonable. Id. (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476-78, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)).

**Prong One: Whether the Plaintiff has established Purposeful Direction or Availment**[12]

The first prong of the specific jurisdiction test refers to both purposeful direction and purposeful availment. In cases involving tortious conduct, courts most often employ a purposeful direction analysis. Schwarzenegger, 374 F.3d at 802. In cases involving contracts, the purposeful availment analysis is most often applied. See, for e.g. Doe v. Unocal Corp., 248 F.3d 915, 924 (9th

[12] The Ninth Circuit has noted that the "purposeful availment" prong, "[d]espite its label ... includes both purposeful availment and purposeful direction. It may be satisfied by purposeful availment of the privilege of doing business in the forum; by purposeful direction of activities at the forum; *or by some combination thereof*." Yahoo! Inc. v. La Ligue Contre Le Racisme, 433 F.3d 1199, 1206 (9th Cir.2006) (en banc).

Cir.2001). Because the parties have framed the false advertising claim as tortious conduct, the Court will apply the purposeful direction analysis to the facts in suit.[13]

Thus, in cases sounding in tort, as here, courts typically inquire whether a defendant "purposefully direct[s] his activities at the forum state, applying an 'effects' test that focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum." Yahoo! Inc. v. La Ligue Contre Le Racisme, 433 F.3d 1199, 1206 (9th Cir.2006) (en banc) (quoting Schwarzenegger, 374 F.3d at 803.) The "effects" test, which is based on the Supreme Court's decision in Calder v. Jones, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), requires that "the defendant *allegedly* must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." Brayton Purcell, 606 F.3d at 1128 (quoting Yahoo!, 433 F.3d at 1206).

**1. Intentional Act**

Here, the first condition is conceded by Defendant in so far that there has been intentional acts of publication by Defendant of internet advertisements about its own products and services. [14] The Court agrees. "Intent" refers only "to an intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act." Brayton Purcell, 606 F.3d at 1128. Thus, irrespective of whether the internet advertisements are false (or not), the act of publication on the website is enough.

As to the remaining requirements of Calder, recent Ninth Circuit cases are instructive as reflected by Mavrix Photo, Inc. v. Brand Techs, Inc., 647 F.3d 1218, 1230 (9th Cir. 2011) ("Mavrix") cert. denied, 132 S. Ct. 1101 (2012).

---

[13] The Court observes that while the argument has not been framed as a purposeful availment case, it is worth noting that the court in Yahoo! did indicate that there may be a degree of overlap between the two forms of analyses. Yahoo! Inc., 433 F.3d1206 In the Court's view, and if the federal advertising claim had been framed as one sounding in contract because Defendant made sales to California residents, which diverted sales away from Plaintiff, this would tend to trigger purposeful availment analysis. Perhaps this is what the Ninth Circuit hinted at when it said that this prong may be satisfied by 'some combination thereof.' Id.

[14] Defendant intimates in its brief that it only contests the second and third prongs. See, Defendant's Motion, at p12 Dkt No. 43.

**2. Expressly Aimed**

The 'expressly aimed' condition was addressed in the Mavrix case. There, the court held that a district court in California had jurisdiction over the defendant despite both parties residing in states outside of California. 647 F.3d at 1221–23. The plaintiff (Mavirx), a celebrity photo agency with its principal place of business in Miami, brought a copyright infringement action in California against an Ohio corporation (Brand). Mavrix alleged that Brand had posted plaintiff's copyrighted photos on its commercial, interactive website. Id. Because Mavrix had alleged copyright infringement, a tort-like cause of action, the court found that 'purposeful direction' was the proper analytical framework – and held that the express aiming element was satisfied. Id.

The Ninth Circuit looked to Calder and Keeton v. Hustler Magazine 465 U.S. 770, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984), noting that the defendant (Brand) had sought to advertise via the web and attract nationwide audiences for commercial gain – including California. See, Mavrix, 647 F.3d at 1229–30. Because Brand had cultivated a nationwide audience for commercial gain, the court found that consumption of its products (via the internet) could not be described as "random," "fortuitous," or "attenuated." See, Burger King, 471 U.S. at 486, 105 S.Ct. 2174, and, therefore, that minimum contacts with a state, such as California, existed.

To satisfy the "expressly aimed' requirement, the Mavrix court also discussed the sliding scale analysis in Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F.Supp. 1119 (W.D.Pa.1997) – an analysis applied to internet website cases and followed in the Ninth Circuit. See, Cybersell, Inc. v. Cybersell, Inc., 130 F.3d 414, 418–19 (9th Cir.1997).

At one end of the scale are active sites "where a defendant clearly does business over the Internet"—and "*enters into contracts* with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet" — which *supports* personal jurisdiction. Mavrix, 647 F.3d at 1229–30. (*Emphasis Added.*) At the other end, are passive sites "where a defendant has simply posted information on the Internet Web site ,which is accessible to users in foreign jurisdiction," and which do *not* support personal jurisdiction. Id. Under the Zippo analysis, the availability of jurisdiction is thus determined by examining the "level of interactivity and commercial nature of the exchange ... that occurs on the website." Id.

In applying the above principles, the Court finds that Defendant's intentional acts were expressly aimed at Plaintiff for the following reasons.

*First*, Defendant has used a highly interactive Incsmart Website to target California consumers. This view is borne out by the uncontroverted factual allegations in the Rosenfeld declaration – particularly the Defendant's website exhibits, which are incorporated into the declaration. See, Rosenfeld Decl. ¶¶9-10 & Exs. G-H. Defendant's website is highly interactive because it offers California-specific services to California consumers (including, California registered agent services and California corporate formation services). Id. ¶10 & Ex. H. Consumers can purchase Incmsart's services directly through Incsmart's interactive website through a typical 'shopping cart' and checkout procedure. Id. ¶9 & Ex. G. Further, the Incsmart Website contains 218 different web pages that offer California-specific services or otherwise discuss California. Id. ¶13 & Ex. I. All these facts are not contested by Defendant; all of which are telling against Defendant's position due to the "level of interactivity and commercial nature of the exchange" that occurs on the website. Id. See, Mavrix, 647 F.3d at 1229–30.

*Second*, the facts in this case bear a resemblance with the Keeton and Mavrix cases. The latter has been discussed, above. In the former, Keeton, Defendant Hustler was sued for libel in New Hampshire despite no other contacts in the forum jurisdiction. While the court conceded that the circulation in New Hampshire was not enough to establish general jurisdiction, the court did find specific jurisdiction because Hustler had "continuously and deliberately" exploited the New Hampshire market, and thus "must [have] reasonably anticipated being haled into court there in a libel action based on the contents of its magazine… aimed at a nationwide audience." Keeton, at 781, 104 S.Ct. 1473.

The Keeton case was followed in Mavrix, where the court also held that Brand "continuously and deliberately exploited" the California market through its interactive website, via targeted advertisements to Californian consumers (albeit third party advertisements).[15] Mavrix, 647

[15] Defendant, Brand allowed third parties to advertise "jobs, hotels, and vacations in California on its website along with "third-party vendors" who sold tickets to California events on its website. It also employed a California firm to design its website, which had has business relationships with a California-based national news organization. While the court held that the "highly interactive website did not confer general jurisdiction", the third party advertisements were considered a

Case5:11-cv-04660-EJD Document52 Filed08/24/12 Page13 of 25

United States District Court
For the Northern District of California

F.3d at 1229–30. The fact that the advertisements targeted California residents indicated that Brand knew—either actually or constructively—about its California user base, and that it exploited that base for commercial gain by "selling space on its website for advertisements." Id.[16]

Similarly, here, Defendant Incsmart has "continuously and deliberately exploited" the California market with its website. The fact that consumers can purchase Incmsart's services directly through a website using a typical 'shopping cart' and checkout procedure, coupled with 218 different web pages that offer California-specific services or otherwise discuss California tends to suggest that the website was deliberately directed at the forum state. See, Rosenfeld Decl. ¶ 9 and13, Ex. I. & Ex. G. As such, Defendant had actual knowledge about its California user base and must have "reasonably anticipated being haled into court" for the false advertising claim based on the content on Defendant's website for California-specific services. See, Keeton, at 781, 104 S.Ct. 1473.[17]

*Third*, the Court is not persuaded by Defendant's assertion that there has been no "express aiming" by Defendant because Plaintiff is not a forum resident. See, Defendant's Motion at p12 Dkt Item No.43. Defendant's bald proposition is not analyzed in the context of the Mavrix case, nor Keeton – both of which held that a district court *may* have jurisdiction irrespective of where the plaintiff and defendant reside. While these cases involved copyright infringement and defamation, respectively, there is no reason why these holdings should not be extended to false advertising claims. Like a trademark claim, a false advertising claim stems from the same federal statute – namely the Lanham Act. Both claims – as the parties agree – are claims 'sounding' in tort so to

---

deliberate exploitation of "the California market"; and thus afforded specific jurisdiction. See, generally, Mavrix, 647 F.3d at 1226–31.

[16] See also, Brayton Purcell, 606 F.3d at 1130 (nonresident defendant subject to specific jurisdiction "had every reason to believe prospective clients in [the forum] would see the website—indeed, attracting new business was the point").

[17] Moreover, and in the Court's view, the exploitation of the commercial gain is even more acute in this case than Mavrix because Defendant is engaging in contracts with California residents. This is not a case where there has been indirect benefit from 'third party advertisers' (and revenue drawn from them); rather, it is one where Defendant allows for an interactive website which cultivates "nationwide audiences for commercial gain", including California. See, Mavrix, 647 F.3d at 1229–30.

13

Case No. C 11-cv-4660-EJD
ORDER DISMISS MOTION FOR LACK OF PERSONAL JURISDICTION AND TRANSFER

Case5:11-cv-04660-EJD Document52 Filed08/24/12 Page14 of 25

United States District Court
For the Northern District of California

invoke purposeful direction analysis, which tends to show that a false advertising claim should be treated much like other claims under the Lanham Act with respect to personal jurisdiction. Likewise, a false advertising claim also bears some similarities with a defamation claim in so far that falsity can underlie both these causes of action.[18] This, too, would tend to show that courts should be permitted to exercise jurisdiction over false advertising claims, irrespective of the parties' residency. See, Keeton 465 U.S. at 772, 104 S.Ct. 1473.

As a corollary of the above, the Court is equally not persuaded by Defendant's specific argument that Plaintiff "has not submitted any admissible evidence that any of the statements contained on [Defendant's] website are false or misleading." See, Plaintiff's Reply at p7, Dkt Item 49. This argument is misplaced because Defendant wrongly seeks to take the present analysis into assessment of the substantive merits of the claim. That argument does not carry weight at the 'front end' of these proceedings; ever more so where Plaintiff need only make a *prima facie* showing of jurisdictional facts (which is all that is required for motions such as the present). See, Doe v. Unocal Corp.,248 F.3d 915, 922 (9th Cir.2001).

In sum, the Due Process Clause should "not readily be wielded as a territorial shield to avoid interstate obligations that have been voluntarily assumed." Id. See, Burger King, 471 U.S. at 473–74, 105 S.Ct. 2174. Therefore, and for the reasons stated above, this condition is satisfied.

**3. Causing harm that the defendant knows is likely to be suffered in the forum state.**

The final Calder condition requires that Plaintiff show that a sufficient level of jurisdictional harm in the forum state. See, Yahoo!, 433 F.3d at 1206. This element does not require that the "brunt" of the harm be suffered in the forum jurisdiction. Importantly, if a jurisdictionally sufficient amount of harm is suffered in the forum state, it does not matter that even more harm might have been suffered in another state. Id., at 1208. This was the holding in Yahoo!, which was buttressed by the Supreme Court's holding in Keeton, where the Court sustained the

[18] A similar analogy was intimated by the court in Mavrix between a copyright claim and defamation claim.) Mavrix, 647 F.3d at 30 ("The Court's decision in Keeton is directly relevant.")

14

Case No. C 11-cv-4660-EJD
ORDER DISMISS MOTION FOR LACK OF PERSONAL JURISDICTION AND TRANSFER

Case5:11-cv-04660-EJD Document52 Filed08/24/12 Page15 of 25

United States District Court
For the Northern District of California

exercise of personal jurisdiction in New Hampshire even though "the bulk of the harm occurred outside New Hampshire." Id. See also, Mavrix 647 F.3d 1218, 1231.

Here, Defendant's intentional act has "foreseeable effects" in the forum. Specifically, it is foreseeable that Plaintiff would be harmed by Defendant's sales of incorporation and registration services in so far that false advertising by Defendant – in violation of the Lanham Act – may "possibl[y] decrease profits" of Plaintiff's business. See, Brayton Purcell, 606 F.3d 1124. See, also, Sanho Corp. v. Cimo Technologies, Inc. 2012 WL 3075094, N.D.Cal., Jul. 30, 2012.

To reinforce the Court's view on harm, the present case is also analogous to Mavrix. There, and despite plaintiff's principal place of business being in Florida – the court held that it was "foreseeable" that economic loss would be "inflicted" in California because of defendant posted photos on the defendant's website causing copyright infringement. The court further held that defendant's actions "destroyed California-based value" which was a "jurisdictionally significant amount". Mavrix 647 F.3d 1218. Similarly, here, Defendant has allegedly diverted sales away from Plaintiff by allegedly making false advertisements – allowing for California consumers to enter into contracts with Defendant. Plaintiff has made a prima facie showing of such harm, and anything more would only take the motion for personal jurisdiction into substantive merits analysis. Accordingly, the foreseeable harm element is made out; and with that, prong one of the test espoused in Schwarzenegger is also satisfied.

**Prong Two: Whether the claims arise out of or relate to Defendant's forum-related activities**

In order to satisfy the second prong of the three-part Schwarzenegger test, Plaintiff must establish that the contacts giving rise to purposeful direction are those that give rise to the current claims. Bancroft, 223 F.3d at 1088. The Ninth Circuit relies "on a *but for* test to determine whether a particular claim arises out of forum-related activities and thereby satisfies the second requirement for specific jurisdiction." Ballard v. Savage, 65 F.3d 1495, 1500 (9th Cir.1995). See also, Rio Props. v. Rio Int'l Interlink, 284 F.3d 1007, 1021 (9th Cir.2002) (holding that defendant's contacts in California – namely its interactive website and direct sales to California consumers – resulted in

15

Case No. C 11-cv-4660-EJD
ORDER DISMISS MOTION FOR LACK OF PERSONAL JURISDICTION AND TRANSFER

United States District Court
For the Northern District of California

the alleged violation of plaintiff's trademark at issue, thus the action arose out of defendant's contacts with California.)

Plaintiff asserts that its claims arise out of Defendants' California-related contacts (which have been addressed above with respect to the first prong). Specifically, Plaintiff asserts that the false advertising claim arises out of Defendants' advertisements on the Incsmart Website, which specifically target California consumers by offering California related services (e.g. California registered agent services, California incorporation services). See, Amended Complaint, Dkt Item No. 17 ¶67. Plaintiff has further alleged that Defendants' advertisements about these California related services were false. Id.

Defendant asserts that because there are insufficient contacts with California, Plaintiff's claims cannot arise out of any forum related activities. The argument (which goes to the second prong), 'piggy-backs' on the argument made on the first prong. This has been addressed above, at length. Since both arguments rise and fall together – and because the Defendant's argument on the first prong was rejected – it also fails on the second prong.

In addition, the court is persuaded by Plaintiff's argument. As discussed above, minimum contacts with the forum state do exist because Defendant targeted California consumers. Plaintiff need only provide a prima facie showing of a claim to establish personal jurisdiction. With respect to the false advertising claim, it is clear that the claim arises from Defendant's activities via its internet website. Because there are sufficient activities by Defendant in California of which the claim arises, this prong is also satisfied.

**Prong Three: Whether the exercise of jurisdiction is reasonable and comports with fair play and substantial justice**

Given that Plaintiff has satisfied the first two prongs, Defendant must now present a compelling case that other considerations render jurisdiction unreasonable. See, Dole Food Co., Inc. v. Watts, 303 F.3d 1104, 1114 (9th Cir. 2002). To that end, courts consider several factors when making this determination: (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating

United States District Court
For the Northern District of California

the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiffs interest in convenient and effective relief; and (7) the existence of an alternative forum. See, CE Distrib., LLC., 380 F.3d at 1112.

The above factors are addressed as follows.

***(1) Purposeful interjection into the forum state's affairs***

Here, Defendants specifically targeted California consumers by advertising California-specific services through its highly interactive website. See, Rosenfeld Decl. ¶¶9-10 & Exs. G-H. Much of the discussion made earlier with respect to purposeful availment is equally applicable to this analysis. See, Dole Food Co., Inc., 303 F.3d at 1114-15.

As such, this factor points heavily towards Plaintiff – a view that is buttressed by the holding in Ziegler v. Indian River County, 64 F.3d 470, 476 (9th Cir. 1995), where the court held that once purposeful availment has been established, the forum's exercise of jurisdiction is presumptively reasonable.

***(2) Burden on the defendant of defending in the forum***

Unless the "inconvenience is so great as to constitute a deprivation of due process, it will not overcome clear justifications for the exercise of jurisdiction." Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316, 1323 (9th Cir. 1998). In particular, where the defendant is able to speak and read English and is located in close geographic proximity to the forum, this factor does not weigh against the exercise of jurisdiction. See, Dole Food Co., Inc., 303 F.3d at 1115. Modern advances in communications and transportation have also significantly reduced the burden of litigation in another country—let alone an adjacent state. See, Sinatra v. Nat'l Enquirer, Inc., 854 F.2d 1191, 1199 (9th Cir.1988).

Defendant is a company that not only provides specific advertising in the state of California, but many other states throughout the country. No evidence has been proffered to indicate that Defendant is without means to litigate this case, other than assertions made in Defendant's motions that IncSmart is a "small business…of modest means." See, Defendants' Motion, Dkt No. 43. Moreover, given modern advances in communication, the inconvenience on

United States District Court
For the Northern District of California

Defendant is lessened. Because arguments going to this factor have not risen to the level of being so great as to constitute deprivation of due process, this favor is viewed as neutral.

***(3) Extent of conflict with the sovereignty of the defendant's state***

Defendant fails to make any real argument of this factor; other than stating that it is neutral and that no apparent conflict exists. Plaintiff, on the other hand, argues that the Defendant has failed to make the necessary showing for this factor – an argument that the Court leans towards in the reasonableness calculus.

***(4) Forum state's interest in adjudicating the dispute***

California has a strong interest in redressing misconduct that targets its citizens, in particular for false advertising where California courts have held that it is a paramount concern to protect its citizens from deception. See, Indiana Plumbing Supply, Inc. v. Standard of Lynn, Inc., 880 F. Supp. 743, 749 (C.D. Cal. 1995). Even where none of the parties is a California citizen, this factor will weigh in favor of jurisdiction where the misconduct occurred in California and affected California consumers. See, Allstar Mktg. Group, LLC, 666 F. Supp. 2d at 1125, Nissan Motor Co. Ltd. v. Nissan Computer Corp., 89 F.Supp.2d 1154, 1161 (C.D.Cal.2000) ("California has a strong interest in protecting its citizens from trademark infringement and consumer confusion.")

As has been addressed earlier, the Amended Complaint alleges that Defendants falsely advertised that they offered various California registered agent services. These advertisements targeted California residents. Plaintiff rightly argues that California has a strong interest in ensuring that California registered agents are qualified to serve as registered agents, that they fulfill the obligations prescribed by California law, and that no confusion exists as to the ability of a company (Incsmart) to lawfully provide the services it purports to make on its website. As such, this factor weighs in favor of the exercise of jurisdiction. *Cf*, Keeton v. Hustler Magazine, 465 U.S. 770, 780–781, 104 S.Ct. 1473, 1481–82, 79 L.Ed.2d 790 (1984) (holding, albeit in defamation, that where defendant circulates magazines in a state, it must reasonably anticipate answering for the truth of its publications and that the state will have an interest in adjudicating the dispute.)

***(5) Most efficient judicial resolution of the controversy***

This factor focuses on the location of the evidence and witnesses. In recent years, it "is no longer weighed [as] heavily" given the modern advances in communication and transportation. Panavision, 141 F.3d at 1323 (citing Caruth v. International Psychoanalytical Ass'n, 59 F.3d 126, 129 (9th Cir.1995)). While Defendant contends that their witnesses and evidence are located primarily in Nevada, Plaintiffs contends that it plans to seek discovery and call witnesses from Google, Yahoo!, and California UPS Store(s), all of whom are based in the forum state of California.

Plaintiff also asserts that requiring it to re-file a lawsuit in Nevada would only serve to delay the resolution of this case. Given that Plaintiff first filed this lawsuit in September 2011, there is some merit in this argument – especially where, on the eve of default judgment, Defendant's Counsel appeared for Incsmart, and the parties agreed to a stipulated order allowing the matter to proceed. See, Stipulated Order Dkt No.39.

Consequently, this factor is neutral in assessing whether exercising jurisdiction over defendants is reasonable.

***(6) Importance of the forum to the plaintiff's interest in convenient and effective relief***

While plaintiff's convenience is not of paramount importance, it is still a factor that the courts must address. See, Dole Food Co., 303 F.3d at 1116. Again, it is important to reiterate that this matter commenced in September 2011 and there has been no formal response to Plaintiff's Amended Complaint. As stated above, Defendant's counsel contacted Plaintiff on the eve of motion for default judgment and agreed to a stipulated order allowing for the matter to proceed. Id. Forcing Plaintiff to now re-file and recommence an action in another forum would be inconvenient, particularly given the delay that would be caused to Plaintiff. This factor weighs in favor of exercising jurisdiction.

***(7) The existence of an alternative forum***

Plaintiff concedes this factor since Nevada is a viable alternative forum. See, Plaintiff's Opposition, at p18 Dkt.

**United States District Court**
For the Northern District of California

***Conclusion on reasonableness factors***

While the last factor goes to Defendant, the remaining factors are either neutral or fall in Plaintiff's favor – particularly, the first factor and fourth factors of the reasonableness calculus. As such, Defendant has *not* presented a compelling case that other considerations render jurisdiction unreasonable.

Accordingly, the Court dismisses Defendant's motion for lack of personal jurisdiction and concludes that parties can proceed this matter in the Northern District of California.

**D. Personal jurisdiction over David Oliver, Michael Lasala and Jo Ann Oliver**

Given that the Court can exercise jurisdiction over Incsmart, it also finds that jurisdiction can be exercised over the directors/officers of Incsmart – namely David Oliver and Michael Lasala. See, generally, Allstar Mktg. Group, LLC v. Your Store Online, LLC, 666 F. Supp. 2d 1109, 1121-23 (C.D. Cal. 2009) (stating that a commercial website through which sales of infringing product were made to customers in forum state, non-resident corporate officers purposefully directed conduct toward forum state).

The Court finds, however, that Plaintiff has not provided a prima facie showing of jurisdictional facts to withstand the motion to dismiss with respect to Jo Ann Oliver. See, Ballard v. Savage, 65 F.3d 1495, 1498 (9th Cir.1995); see also AT & T v. Compagnie Bruxelles Lambert, 94 F.3d 586, 588 (9th Cir.1996). As such, the Court grants Plaintiff leave to amend.

**E. Transfer Motion**

The Court next turns to Defendant's motion to transfer these proceedings to Nevada. To determine the merits of this motion, the Court applies 28 U.S.C. § 1404(a). That provision provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

Section 1404(a) affords a court broad discretion to transfer a case to another district where venue is also proper. See, e.g., Sparling v. Hoffman Constr. Co., 864 F.2d 635, 639 (9th Cir.1988). A court must "adjudicate motions for transfer [of venue] according to an 'individualized, case-by-case consideration of convenience and fairness." Jones v. GNC Franchising, Inc., 211 F.3d 495,

United States District Court
For the Northern District of California

498 (9th Cir.2000) (quoting Stewart Org. v. Ricoh Corp., 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988)).

In deciding a motion to transfer venue, the court must weigh multiple factors, including (1) the plaintiff's choice of forum; (2) the convenience of the parties; (3) the convenience of the witnesses; (4) the location of books and records; (5) which forum's law applies; (6) the interests of justice; and (7) administrative considerations. See also, Jones, 211 F.3d at 498-99.

The burden is on the moving party to establish that a transfer will allow a case to proceed more conveniently and better serve the interests of justice. See, Commodity Futures Trading Comm. v. Savage, 611 F.2d 270, 279 (9th Cir.1979); STX, Inc. v. Trik Stik, Inc., 708 F.Supp. 1551, 1555-56 (N.D.Cal.1988) ("In seeking to transfer a case to a different district, a defendant bears a heavy burden of proof to justify the necessity of the transfer.")

***(1) The plaintiff's choice of forum***

The plaintiff's choice of forum should not be easily overturned. Id. Courts must treat transfers for convenience as an exceptional tool to be employed sparingly. See, In re Air Crash at Taipei, Taiwan, No. 01 MDL 1394-GAF, 2003 WL 25781233, *1 (C.D. Cal. Mar. 27, 2003). A plaintiff's choice of forum is rarely disturbed, unless the balance is strongly in favor of the defendant. See, Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947); and Lou v. Belzberg, 834 F.2d 730, 739 (9th Cir.1987).

Here, Defendant argues that this factor should be afforded less weight because Plaintiff is not a California resident. Although there is some merit in this argument, it does not mean that there is no weight in Plaintiff's choice of forum. Even though Plaintiff is a Nevada corporation, it is registered to conduct business in the State of California and to serve as a commercial registered agent in California. See, Rosenfeld Decl. ¶16-17 & Exs. K-L. Plaintiff generates a significant portion of its business from California. See, Declaration of Tennie Sedlacek, ¶4, Dkt No. 48 ("Sedlacek Decl."). There has also been alleged deception of California consumers giving rise to the Lanham Act claim in the forum jurisdiction. Thus, contrary to Defendant's argument, Plaintiff has significant connections to California to rebut Defendant's position. This vindicates Plaintiff's choice of forum and sways this factor in its favor.

***(2) The convenience of the parties***

Both parties reside in Nevada. While they each have contacts in California, this factor would tilt towards Defendant.

***(3) The convenience of the witnesses***

Two types of witnesses exist for the purposes of this factor: a) party witnesses and b) non-party witnesses. Both are relevant to the present motion to transfer. But, as outlined below, each has varying weight when considering this factor.

a) Party Witnesses: Defendant argues that all the party witnesses reside in Nevada, and thus transfer is appropriate. Plaintiff cites recent case-law, however, which finds that (in)convenience must be demonstrated through affidavits. Specifically, the affidavit must state: "who the key witnesses will be, and what their testimony will generally include." Adoma v. Univ. of Phoenix, Inc., 711 F.Supp.2d 1142, 1151 (E.D.Cal.2010). Given that the burden for transfer is on the moving party, it follows that the moving party should be required to demonstrate the particulars noted in the Adoma case. Defendant's failure to do so, in this case, does not support its motion for transfer.[19]

b) Non-Party Witnesses: In balancing the convenience of witnesses, "the convenience of non-party witnesses is a more important factor than the convenience of party witnesses." Metz v. U.S. Life Ins. Co. in City of New York, 674 F. Supp. 2d 1141, 1147 (C.D. Cal. 2009). Here, Defendants have failed to identify any non-party witnesses that would be inconvenienced by this litigation. By contrast, Plaintiff has identified several non-party witnesses located in California. For example, Google, Inc., based in Mountain View, CA, and Yahoo! Inc., based in Sunnyvale, CA – both of whom Plaintiff expects will testify about Plaintiff's online advertising program. See, Rosenfeld Decl. ¶15 & Exs. A,B and E. In addition, Plaintiff has identified both the UPS Store (located in Dublin, CA) and Incsmart's purported California Affiliate to testify about Defendants' rental mailbox; the

[19] See, also, Skyriver Techn. Solutions, LLC v. OCLC Online Computer Library Ctr. ., Inc., No. CV 10–03305 JSW, 2010 WL 4366127, at *3 (N.D.Cal. Oct.28, 2010.) (Noting that "the convenience of a litigant's employee witnesses are entitled to little weight because litigants are able to compel their employees to testify at trial, regardless of forum").

United States District Court
For the Northern District of California

use of that mailbox to accept service of legal documents and the affiliate's qualification to serve as a commercial registered agent in California, along with the revenue derived from that service. Id. This evidence will no doubt be highly relevant and potentially dispositive of this matter.

Because several non-party witnesses do exist in California – and since the convenience of non-party witnesses is an important consideration – Defendant's position is further weakened by the facts going to this factor.

***(4) The location of books and records***

Both parties indicate that location of documentary evidence does not weigh heavily; ever more so where advances in technology have made it easy for documents to be transferred to distant locations. See, Metz, 674 F. Supp. 2d at 1149. However, Plaintiff does point out that Defendant has not particularized the location of documents and the difficulty of transportation of those documents in declaration form. Again, this would cut against Defendant in so far that there are less facts supporting the discharge of Defendant's burden for transfer.

***(5) Which forum's law Applies and predominates***

The fifth factor addresses which forum's law applies to the plaintiff's claims. Where claims are grounded in federal statutory law – as some of the claims are here – this factor carries little weight. See, Allstar Mktg. Group, LLC, 666 F. Supp. 2d 1109, 1133 (C.D. Cal. 2009) (applying little weight to fifth factor where plaintiff's claims were primarily trademark and copyright claims.)

With respect to Plaintiff's state law claims, this Court is arguably more familiar than a Nevada court with California's choice-of-law rules – which will determine whether Plaintiff's claims should be adjudicated under California or Nevada law – regardless of whether the case is transferred. Id., at 1133 n.54. See also, Costco Wholesale Corp., 472 F.Supp.2d 1183, 1191 (S.D.Cal.2007)).

Thus, as to the state claims, this factor weighs slightly against transferring this case.

United States District Court
For the Northern District of California

***(6) The interests of justice***

"The 'interest[s] of justice' include such concerns as ensuring speedy trials, trying related litigation together, and having a judge who is familiar with the applicable law try the case." See, Allstar Mktg. Group, LLC, 666 F. Supp. 2d at 1134 (quoting Heller Financial, Inc. v. Midwhey Powder Co., Inc., 883 F.2d 1286, 1293 (7th Cir.1989)).

This matter commenced in September 2011. There has been no formal response to Plaintiff's Amended Complaint. As stated earlier, Defendant's counsel contacted Plaintiff on the eve of motion for default judgment and both agreed to a stipulated order allowing for the matter to proceed. See, Stipulated Order, Dkt Item No. 40. If this proceeding is transferred to another forum, it would only delay the litigation. Thus, this factor weighs against transfer.

***(7) Administrative considerations***

Typically, administrative considerations, such as docket congestion, are given little weight in assessing the grant of a transfer motion. See, Gates Learjet Corp. v. Jensen, 743 F.2d 1325, 1335 (9th Cir.1984) cert. denied, 471 U.S. 1066, 105 S.Ct. 2143, 85 L.Ed.2d 500 (1985); see also, Allstar Mktg. Group, LLC, 666 F. Supp. 2d at 1134. While little weight is given, the median case time for actions in this district is essentially the same for cases in the District of Nevada. See, Rosenfeld Decl. ¶18 & Ex. M. For cases that require court action, the median case time until resolution is also essentially the same. Id. Accordingly, this would be neutral and thus does not favor Defendant's motion.

**Conclusion on Transfer Motion**

Because the above factors tilt towards Plaintiff, the necessary burden imposed on Defendant has not been discharged and the motion to transfer the proceedings is dismissed. See, generally, STX, Inc. 708 F.Supp. at 1555-56 and Gulf Oil Corp. 330 U.S. at 508.

Case5:11-cv-04660-EJD Document52 Filed08/24/12 Page25 of 25

United States District Court
For the Northern District of California

**III. CONCLUSION**

For the reasons stated above, Defendants' motion to dismiss for lack or personal jurisdiction, or, in the alternative to transfer the venue to the District of Nevada is *denied* with respect to Incsmart, David Oliver and Michael Lasala.

Defendants' motion to dismiss for lack of personal jurisdiction is *granted* with respect to Jo Ann Oliver.

The Court also grants Plaintiff leave to amend with respect to subject matter jurisdiction (i.e. the Computer Fraud and Abuse Act claim) and personal jurisdiction with regard to Jo Ann Oliver.

**IT IS SO ORDERED.**

Dated: August 24, 2012

EDWARD J. DAVILA
United States District Judge

25

Case No. C 11-cv-4660-EJD
ORDER DISMISS MOTION FOR LACK OF PERSONAL JURISDICTION AND TRANSFER